[No. B188113. Second Dist., Div. Four. Oct. 24, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL HRAYR DEMIRDJIAN, Defendant and Appellant.

## COUNSEL

Fay Arfa for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and A. Scott Hayward, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EPSTEIN, P. J.**—In this case, we affirm the imposition of two consecutive terms of 25 years to life (with possibility of parole) based on two special circumstance murders. We reject appellant's arguments that imposition of consecutive terms violates constitutional proscriptions against cruel and/or unusual punishment. We also reject his claim that the punishment is not authorized by statute.

## FACTUAL AND PROCEDURAL SUMMARY

After a declaration of mistrial when the initial jury was unable to reach a verdict, Michael Hrayr Demirdjian was convicted by a second jury of the murders of Blaine Talmo, Jr., and Chris McCulloch, with multiple murder and torture-murder special circumstances. (The jury rejected a third special circumstance: robbery felony murder.) Appellant Demirdjian was 15 years old when the crimes were committed. He was sentenced to two terms of life imprisonment without possibility of parole. He raised several arguments on appeal, including a contention that the sentence was cruel and unusual, in violation of the Eighth Amendment. In an unpublished opinion, we rejected these arguments and affirmed the conviction. After remittitur issued on that appeal, appellant sought relief through a petition for habeas corpus, raising multiple claims that trial and appellate counsel each provided constitutionally deficient representation.

While the habeas corpus petition was pending, the Attorney General wrote the trial court, advising that the sentence imposed was unauthorized. The reason was that a term of life imprisonment without possibility of parole cannot be imposed on a minor who was under 16 when the crime was committed. (Pen. Code, § 190.5, subd. (b); all further statutory references are to this code unless another is designated.) Apparently, everyone concerned had missed this restriction at sentencing and on appellate review of the case. Upon receiving the Attorney General's letter, the trial court set the matter for a new sentencing hearing. The only issue argued at that hearing was whether the 25-years-to-life sentences for the murder/special circumstance convictions should be consecutive or concurrent. The trial court ordered that they be consecutive, effectively vacating the earlier sentence.

It is from the new sentence that appellant now appeals. He raises two arguments: that the resulting sentence violates the cruel and unusual punishment clause of the Eighth Amendment as well as the cruel or unusual provision of the California Constitution (art. I, § 17), and that the punishment is not statutorily authorized.

### I

We are met at the outset with respondent's argument that appellant "waived" any constitutional objection to the new sentences, by failing to object at sentencing on any ground other than imposition of consecutive, rather than concurrent sentences. (The correct term to describe the general rule that an appellant is not entitled to raise an issue on appeal that was not preserved in the trial court is forfeiture, not waiver; see *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 371 [58 Cal.Rptr.2d 458, 926 P.2d 438].) In

reply, appellant argues that an objection on cruel and/or unusual punishment grounds would have been futile because, although not raised at the original sentencing, it was raised and considered on its merits on appeal. Beyond that, appellant's forfeiture, if his inaction amounted to that, does not preclude an appellate court from reaching the issue. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429].) We proceed to do so.

Appellant's argument about excessive punishment is based on the fact that he was a juvenile, 15 years of age, when the homicides were committed. He relies on discussion in several United States Supreme Court decisions which address the relative immaturity of minors as compared to adults, their susceptibility to negative influences and outside pressures, and lack of formed character traits. One of them, *Roper v. Simmons* (2005) 543 U.S. 551, 569 [161 L.Ed.2d 1, 125 S.Ct. 1183] (*Roper*), holds the death penalty is excessive punishment when imposed on a person who was under 18 when the underlying crime was committed; and an earlier case, *Thompson v. Oklahoma* (1988) 487 U.S. 815, 823 [101 L.Ed.2d 702, 108 S.Ct. 2687] (*Thompson*), reached the same conclusion with respect to minors under 16.

*Roper* and *Thompson* are death penalty cases in which the state court had upheld imposition of that penalty on a person who was a juvenile when the homicides were committed. " ' "[D]eath is different." ' " (*Kansas v. Marsh* (2006) 548 U.S. ___, ___ [165 L.Ed.2d 429, 126 S.Ct. 2516, 2528]; see *Gregg v. Georgia* (1976) 428 U.S. 153, 188 [49 L.Ed.2d 859, 96 S.Ct. 290].) *Roper, Thompson* and other cases focus on and are replete with references to the excessiveness of the death penalty when applied to a minor. (See, e.g., *Roper, supra,* 543 U.S. at pp. 568, 571, 572; *Thompson, supra,* 487 U.S. at p. 836 (plur. opn.).) Justice O'Connor's concurring opinion in *Thompson,* in which she cast the fifth and decisive vote for the judgment in that case, pointed out the significance of the distinction: "The Court has accordingly imposed a series of unique substantive and procedural restrictions designed to ensure that capital punishment is not imposed without the serious and calm reflection that ought to precede any decision of such gravity and finality." (*Thompson,* at p. 856.)

The high court's focus on the distinction between execution and lesser sanctions also is shown in passages from *Atkins v. Virginia* (2002) 536 U.S. 304, 306 [153 L.Ed.2d 335, 122 S.Ct. 2242], in which the court held that the death penalty cannot be imposed on mentally retarded persons. The court recognized that mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes, and while capital punishment is inappropriate for such persons, "[t]heir deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability." (*Id.* at p. 318.)

We are not cited to United States Supreme Court or California authority holding that life imprisonment is constitutionally excessive, irrespective of other circumstances, where special circumstance murder is committed by a juvenile. Certainly, the viciousness and circumstances of the crime must be considered in any assessment of punishment.

The circumstances in this case are particularly horrendous. The bodies of the two boys, aged 13 and 14, were found at the playground of their school. As summarized in our earlier opinion, "[t]here was a 16-pound rock next to Blaine's head and a 3-pound rock a few yards away. Both boys had head injuries and there was blood all over the school yard—on fences, rails, playground equipment and in two outdoor sinks. There was also a broken bottle with a red stain on it. A 60-pound, 12-foot bench was lying across Chris' chest and neck. A trail of bloody footprints led from the bodies to the sinks. . . . [¶] Autopsies of the boys showed that they died of multiple blunt force trauma to their heads and bodies. The rocks were identified as potential weapons. Chris' neck and chest were compressed and his liver was torn apart."

A fuller description appears in appellant's habeas corpus petition, as part of his argument that appellate counsel should have argued that the evidence did not support the torture findings: "Granted, the murders had been brutal. Chris had bruises and abrasions all over his body, including his face, jaw, neck, arm, chest, abdomen and genitals. Chris died of blunt force trauma. His skull was fractured and he had brain tissue trauma. His neck was compressed, causing petechia, i.e., bursting blood vessels in the eyes. His chest was compressed, causing a one-quarter-inch tear to the heart. His liver was torn apart. A 16-pound and 3-pound rocks [*sic*] were a potential weapon and consistent with the head injuries. A bench placed on top of Chris' body could have caused the neck and chest trauma and the liver damage. [¶] Similarly, Blaine died a brutal death from multiple blunt force trauma. He had abrasions to his body, mostly to his chest and abdomen. About four blows caused lacerations to his head. The injuries were consistent with having been caused by the 16-pound rock." (Internal record citations omitted.) This portion of the habeas corpus petition went on to argue that, notwithstanding all of this, the record did not establish intent to inflict pain as a matter of law.

Addressing the argument that imposition of two terms of life imprisonment without possibility of parole constituted cruel and unusual punishment, we stated: "The murders were savage and apparently unprovoked, and the evidence supports an inference that appellant premeditated the manner of killing. Appellant then attempted to dispose of the evidence and denied wrongdoing when questioned. Finally, appellant's youth or lack of prior convictions does not make the punishment grossly inappropriate. Appellant

was shown to be dealing in narcotics sales, had firearms in his possession, and it was not established that he was an unusually immature or naïve youth."

We cited *People v. Guinn* (1994) 28 Cal.App.4th 1130 [33 Cal.Rptr.2d 791], which addressed a claim similar to the one made here. *Guinn* distinguished *People v. Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697], relied upon by the defendant in that case and by appellant in this appeal. In *Dillon*, the court reduced a murder conviction to manslaughter in the case of a 17-year-old boy who shot a man he thought was about to shoot him, who had no prior record, and as to whom the jury had expressed reluctance to convict of first degree murder. (*Guinn, supra*, 28 Cal.App.4th at p. 1146.) Responding to the claim that a life sentence without possibility of parole on a 17 year old is extreme, the *Guinn* court said that while that punishment is very severe, "the People of the State of California in enacting the provision [authorizing this punishment] . . . made a legislative choice that some 16- and 17-year-olds, who are tried as adults, and who commit the adult crime of special circumstance murder, are presumptively to be punished with LWOP. We are unwilling to hold that such a legislative choice is necessarily too extreme, given the social reality of the many horrendous crimes, committed by increasingly vicious youthful offenders, which undoubtedly spurred the enactment." (*Guinn, supra*, 28 Cal.App.4th at p. 1147.)

■ We reach a similar conclusion in this case. While appellant was sentenced to two consecutive 25-years-to-life terms, he will be eligible for parole. If, as we previously held, a life sentence without possibility of parole is not constitutionally excessive, surely this one is not. More fundamentally, we are not persuaded that the decision of the United States Supreme Court holding that execution of a person who was under 18 at the time his or her crime was committed is cruel and unusual punishment bars a term of life imprisonment. We find no categorical prohibition against imposition of a life term on juveniles who commit special circumstance murder. On the merits of this case, we find no violation of the state or federal constitutional prohibitions against excessive punishment.

## II

■ Appellant's second argument is somewhat more difficult to follow. He argues that section 602 of the Welfare and Institutions Code is "vague and uncertain" and should not be construed to authorize imposition of a life sentence on a juvenile offender. Section 602 was adopted as part of the Gang Violence and Juvenile Crime Prevention Act, enacted by Proposition 21 in 2000. The pertinent part of the section is subdivision (b), which provides that any person who is alleged to have committed any of certain specified crimes while 14 years of age or older "shall be prosecuted under the general law in a

court of criminal jurisdiction." Among the listed crimes is special circumstance murder. (Welf. & Inst. Code, § 602, subd. (b)(1).)

We find nothing ambiguous in the statute. It does not prescribe a life term, or any term at all, for juvenile offenders.

■    As respondent points out, appellant's actual claim concerns applicable provisions of the Penal Code. The basic provision is section 190, subdivision (a), which provides that anyone convicted of first degree murder "shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life." Section 190.2 specifies when the death penalty or life imprisonment without possibility of parole may be imposed. That level of punishment is required when the defendant is convicted of first degree murder with one or more special circumstances. (Among the listed special circumstances are the two found in this case: multiple murder (subd. (a)(3)) and intentional murder involving infliction of torture (subd. (a)(18).)

Section 190.5, as amended by a 1990 initiative, applies to persons who were juveniles when the crime was committed. Subdivision (a) prohibits imposition of the death penalty upon anyone who was under 18. Subdivision (b) specifies that the maximum penalty for a juvenile who was 16 or 17 when the crime was committed is imprisonment for life without possibility of parole, or a term of 25 years to life. The trial court has discretion in selecting which of these penalties to impose.

■    Reading these related provisions together with Welfare and Institutions Code section 602 and harmonizing them so far as possible, as we are required to do (see *In re Wilson* (1925) 196 Cal. 515, 522, 524 [238 P. 359]), a clear result may be distilled. While generally a special circumstance murder must be punished by death or life imprisonment without possibility of parole, there are two levels of exception for juvenile offenders. First, they may not be punished by death. Second, if the offender was 16 years of age or over, punishment may be a life term without possibility of parole, or a term of 25 years to life, at the discretion of the court. For juveniles under 16 who were 14 or 15 when the crime was committed, a life term without possibility of parole is not permitted, leaving a term of 25 years to life *with* possibility of parole. That is the term the trial court imposed. It is a valid term under the statutes.

## DISPOSITION

The judgment is affirmed.

Willhite, J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 24, 2007, S148193. Moreno, J., did not participate therein.