Filed 5/14/13  P. v. Propker CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN PROPKER,<br><br>        Defendant and Appellant. | B240210<br><br>(Los Angeles County<br>Super. Ct. No. MA047962) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Affirmed as modified.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Rene Judkiewick, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

## FACTS AND PROCEDURE

On December 30, 2009, when he was 15 years old, defendant Jonathan Propker, a member of the Crooks gang, shot and killed E.H. E.H. was a member of the BOP gang, which is a rival gang of defendant's gang.

The shooting occurred following a botched drug sale. E.H.'s brother, D.H., arranged to sell defendant an ounce of marijuana at a designated location where D.H. drove himself and E.H. D.H. previously had sold marijuana to defendant, who he knew as "Slick." According to D.H., defendant entered the vehicle, looked around, pulled out a shotgun, and pointed the gun directly at him. Defendant ordered D.H. to "give me what the fuck you got." Defendant then pointed the gun at E.H. and shot him. After defendant shot E.H., he pointed the gun back at D.H. and repeated: "I said, give me what you got." Neither D.H. nor E.H. had a weapon, and E.H. had not reached for a weapon prior to being shot. D.H. did not know defendant to be a member of any gang. After E.H. died, D.H. noticed Crooks graffiti near their home.

Defendant shot D.H. using a shotgun that required cocking back the hammer and pulling the trigger in order to fire. Defendant obtained the gun on December 29, the day before the marijuana purchase. According to defendant, he intended to purchase marijuana from D.H. but was unaware E.H. would be present at the sale. Defendant claimed he became frightened when he saw E.H., who he knew to be a BOP gang member. Defendant saw E.H. reach for something, "freaked out," and shot E.H. Defendant testified he thought E.H. was reaching for a weapon. Defendant denied being a member of a gang and denied committing any crimes to show loyalty to a gang. Defendant's friend Neil Flores – a member or former member of the Crooks gang – accompanied defendant to the sale, but defendant denied asking Flores to act as a lookout.

According to Flores, he and defendant went to purchase the marijuana. On the way, defendant showed Flores his shotgun. Flores had a "hunch" defendant would use the gun. When D.H.'s car approached, defendant walked towards it. Flores heard a gunshot and asked defendant what happened. Both fled the scene. After the incident, Flores told officers he went with defendant in case anything happened. Flores was able

2

to retrieve defendant's shotgun from other Crooks members. Flores denied acting as a lookout and denied asking defendant to commit the crime to show his allegiance to Crooks. Other evidence showed defendant frequently spent time with Flores. Flores testified he was "not really" a member of Crooks on December 30 but admitted he previously had been in the gang.

According to defendant's cousin, Christopher N., defendant told Christopher about the killing. Defendant said he was involved in a murder with Chuko, who Christopher knew to be Flores. Defendant said he killed a BOP. On cross-examination, Christopher testified defendant did not mean to shoot E.H.

Detective David Welle opined that both defendant and Flores were members of the Crooks gang. He concluded Flores was a member of the Crooks gang based on his tattoos and Flores's girlfriend's and mother's statements confirming Flores was a member of Crooks. Welle acknowledged that defendant had not been a gang member long, and indeed Welle confirmed E.H.'s killing may have been defendant's initiation into the gang. Welle testified one method of joining a gang is "putting in work," for the gang, which means commit crimes. Welle further testified that committing crimes was a way to enhance an individual's reputation within the gang and the gang's reputation within the community.

Defendant did not have gang tattoos and had not been identified as a gang member in field identification cards, used by law enforcement to record stops with gang members. Approximately half of the Crooks gang members were documented in field identification cards. Detective Welle's opinion that defendant was a member of Crooks was supported by information he received from Christopher (which Christopher denied) that defendant was a member of a gang that started with a "C." Welle also based his opinion on a book found at defendant's house with gang graffiti.[1] The book had defendant's nickname Slick and the name Crooks, as well as the abbreviation CKS.

---

[1]     Defendant testified other persons wrote in the book.

After both sides rested, the prosecutor informed the court he intended to pursue only a felony-murder theory. Based on that election, the court refused defendant's counsel's request to instruct jurors on voluntary manslaughter, self-defense, and unreasonable self-defense.

Defendant was convicted of murder, and jurors found that he committed the murder during the commission of an attempted robbery. Defendant also was convicted of two counts of attempted robbery, with E.H. and D.H. as the victims. As to all crimes, jurors found the gang enhancement to be true (Pen. Code, § 186.22, subd. (b)(1)(C))[2] and defendant personally discharged a firearm causing death to E.H. within the meaning of section 12022.53, subdivision (d) and also found subdivisions (b) and (c) of that statute applicable. The court imposed and stayed the section 12022.53, subdivisions (b) and (c) enhancements. The court sentenced defendant to life imprisonment without the possibility of parole for the murder. For each attempted robbery, the court sentenced defendant to a total term of 38 years to life, which included the high term of 3 years on the substantive offense, 10 years for the gang enhancement, and 25 years to life for the personal use and discharge of a firearm causing death. One attempted robbery sentence was ordered concurrent and the other consecutive.

## DISCUSSION

### 1. Sufficiency of the Evidence of the Gang Allegation

Section 186.22, subdivision (b)(1) requires the prosecution prove the crimes were "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Defendant argues the evidence was insufficient to support the gang allegation. "In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find

---

[2] All undesignated statutory references are to the Penal Code unless otherwise stated.

4

the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Here, the evidence supported the finding that defendant acted for the benefit of, at the direction of, or in association with the Crooks gang. Detective Welle opined the crimes were committed for the benefit of the gang and circumstantial evidence supported that conclusion. Defendant committed the crime with Flores, who jurors could have concluded was an active member of Crooks, notwithstanding Flores's denial of continued membership. (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [fact defendant committed crime in association with other gang members supports gang enhancement].) The victim was a member of a rival gang, BOP. (*People v. Jasso* (2012) 211 Cal.App.4th 1354, 1376-1377 [shooting at rival gang member supports finding that crime committed for benefit of gang].) Defendant's cousin Christopher told police defendant killed a BOP after defendant told Christopher about the killing. After the incident, Flores was able to retrieve the gun from other members of the Crooks gang, suggesting it was a gang gun. After the crime, Crooks graffiti was painted near E.H.'s home. Although defendant denied Slick was a gang moniker and denied being a member of a gang, the jury was not required to credit defendant's denials. The evidence that he shot a rival gang member while another gang member was present supported the inference defendant acted for the benefit of the gang or in association with the gang.

There also was sufficient evidence to support the jury finding that defendant acted with the specific intent to benefit the Crooks gang. Detective Welle opined that committing crimes benefits an individual's reputation in the gang and the gang's reputation in the community, which supports the finding that defendant acted with the requisite specific intent. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 63.) Additionally, defendant obtained the gun the day before he was scheduled to purchase marijuana from

5

D.H. Prior to the meeting, he showed Flores the shotgun, causing Flores to have a "hunch" defendant would use it. Defendant assaulted and killed a rival gang member and later reported to his cousin that he killed a BOP. Defendant ensured that a more experienced gang member would be present at the scene of the shooting, and both fled together. From this evidence, a reasonable jury could conclude defendant planned to use the gun prior to the shooting, and he obtained the approval of a more experienced gang member, Flores, prior to the incident and that he intended to benefit the Crooks gang. The fact Flores and defendant denied the crime was gang related did not require the jury to credit their denials.

## 2. *Instructions on Lesser Included Offenses*

Defendant was charged with murder in violation of Penal Code section 187. Defendant argues the court was required to instruct on voluntary manslaughter, self-defense, unreasonable self-defense, and accident. We conclude even if the court erred in failing to give these instructions, any error was harmless beyond a reasonable doubt.

Any error in failing to give the requested instructions was harmless beyond a reasonable doubt because the verdict demonstrates jurors necessarily found defendant committed a felony murder. The true findings on the special circumstance shows jurors necessarily concluded that the murder "was committed during the commission of an attempted robbery . . . ." Even if the court should have instructed the jury on voluntary manslaughter, self-defense, unreasonable self-defense, and accident, jurors could not have reached a verdict more favorable to defendant because they found him guilty of felony murder. Upon finding him guilty of felony murder based on the robbery, jurors were required to convict defendant of first degree murder. (§ 189.) Therefore, any error was harmless beyond a reasonable doubt.

Our high court applied the same reasoning in *People v. Castaneda* (2011) 51 Cal.4th 1292, 1328-1329. In *Castaneda*, jurors convicted the defendant of first degree murder either on a felony-murder theory or on a theory that the murder was willful, deliberate and premeditated. (*Id*. at p. 1328.) Jurors also found true the special circumstance that defendant was engaged in the commission or attempted commission of the crimes of burglary, sodomy, and robbery. (*Ibid*.) Because jurors found the special

6

circumstance true, jurors necessarily would have found the defendant guilty of "'first degree murder under a felony-murder theory, at a minimum, regardless of whether more extensive instructions were given on second degree murder. [Citations.]' [Citation.]" (*Ibid.*) Therefore, "any error in not instructing the jury concerning second degree murder was harmless beyond a reasonable doubt." (*Ibid.*)

### 3. *Evidence of Defendant's Age*

The trial court excluded evidence of defendant's age. The court found the evidence was likely to evoke sympathy and its probative value was outweighed by its prejudicial impact. Defendant argues the court abused its discretion in excluding the evidence because the evidence was relevant to whether he formed the intent to kill and his intent with respect to the gang allegation. We disagree.

Defendant's age is not probative of his ability to form the intent to kill or the specific intent to promote the gang. There was no suggestion defendant – at age 15 – was unable to form these intents. Defendant did not testify he was unable to form the intent to kill or to act in a manner to promote a gang. No expert testified a 15-year-old could not form the specific intent to kill or to act to promote a gang. Therefore, defendant fails to show the evidence was probative.

Finally, even if the court should have allowed defendant to testify he was 15 years old, the error in excluding the evidence was harmless under any standard. Defendant testified to information suggesting his age without specifically mentioning it. Defendant testified he had smoked marijuana since junior high, which was about two years. Defendant testified he was too young to have a job. Jurors could see defendant throughout the trial, and during his testimony and could estimate his age from their view of him. The record does not support defendant's theory that information about his age would have affected the outcome of trial.

### 4. *Sentencing Issues*

#### A. *Life Without the Possibility of Parole Sentence Must Be Modified*

Defendant argues the trial court erred in concluding it was required to impose a sentence of life without the possibility of parole on him. Defendant also argues this sentence violates the Eighth Amendment to the federal Constitution, which prohibits the

7

imposition of cruel and unusual punishment.[3] We agree with the former contention and therefore need not consider the latter.[4]

The law differentiates between a special murder circumstance committed by an adult and one committed by a juvenile. It further differentiates punishment based on the age of the juvenile at the time of the commission of the murder. "While generally a special circumstance murder must be punished by death or life imprisonment without possibility of parole, there are two levels of exception for juvenile offenders. First, they may not be punished by death. Second, if the offender was 16 years of age or over, punishment may be a life term without possibility of parole, or a term of 25 years to life, at the discretion of the court. For juveniles under 16 who were 14 or 15 when the crime was committed, a life term without the possibility of parole is not permitted, leaving a term of 25 years to life *with* possibility of parole." (*People v. Demirdjian* (2006) 144 Cal.App.4th 10, 17.) The court therefore should have imposed a term of 25 years to life with the possibility of parole instead of a sentence of life without the possibility of parole.

*B. Attempted Robbery of E.H. Must Be Stayed*

Defendant argues the attempted robbery counts must be stayed because sentencing him to both attempted robbery and to felony murder violated section 654, which

---

[3]     Respondent argues this court need not consider these arguments because after defendant was sentenced, the Legislature passed section 1170, subdivision (d)(2)(A)(i), which provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing."

Section 1170 does not operate to correct an unlawful sentence and therefore does not effectively answer defendant's contention that his sentence was unconstitutional because he was 15 when he committed the crime.

[4]     In *Miller v. Alabama* (2012) __ U.S. __ [132 S.Ct. 2455, 2469], the United States Supreme Court held the Eighth Amendment prohibits a sentencing scheme mandating life in prison without the possibility of parole for juveniles convicted of homicide. *Miller* does not apply here because under California's sentencing scheme a person under 16 cannot be committed for life without the possibility of parole.

8

provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (*Id.*, subd. (a).)

Defendant's argument is correct insofar as it concerns the sentence for E.H., the murder victim. (*People v. Meredith* (1981) 29 Cal.3d 682, 695-696 [robbery sentence must be stayed when defendant convicted of felony murder based on robbery].) Thus, the sentence must be modified to stay punishment for the attempted robbery of E.H. However, section 654 does not prohibit separate punishment for the attempted robbery of D.H. (*People v. Young* (1992) 11 Cal.App.4th 1299, 1312 [when one person is robbed and a different person is killed, a defendant may be punished for both crimes].)

*C. Gang Enhancement and Firearm Use Enhancement Were Properly Imposed*

Defendant argues the court erred in imposing sentence under section 12022.53, subdivision (d) and section 186.22, subdivision (b)(1)(C). Defendant's argument is based on an ambiguity in section 12022.53. Subdivision (e)(2) of section 12022.53 expressly allows both a firearm use enhancement and a gang enhancement when a defendant personally discharges a firearm.[5] In contrast, subdivision (j) provides only the longest enhancement is applicable.[6] Recognizing this statutory inconsistency, we conclude the

---

[5] Section 12022.53, subdivision (e) states as follows: "(1) The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of Section 186.22. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d). [¶] (2) An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."

[6] Section 12022.53, subdivision (j) provides: "For the penalties in this section to apply, the existence of any fact required under subdivision (b), (c), or (d) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact. When an enhancement specified in this section has been

trial court properly applied both enhancements.  Because subdivision (e) carves out a narrow exception specifically applicable to this case, it trumps the more general provision.  (Cf. *People v. Ahmed* (2011) 53 Cal.4th 156, 159 ["specific statutes prevail over general statutes"].)  *People v. Robinson* (2012) 208 Cal.App.4th 232, 261, similarly held under similar circumstances that both the firearm use under section 12022.53 and the gang enhancement under section 186.22 could be applied.

## DISPOSITION

The judgment is modified to (1) stay the sentence on the attempted robbery of E.H. and (2) reduce the sentence of life without the possibility of parole to 25 years to life.  As modified, the judgment is affirmed.


FLIER, J.


We concur:


BIGELOW, P. J.



GRIMES, J.

---

admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another enhancement provides for a greater penalty or a longer term of imprisonment."