Filed 6/18/24 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B329999 (Super. Ct. No. 2009024052) (Ventura County) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.M., <br><br> Defendant and Appellant. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered the opinion filed herein on May 31, 2024, be modified as follows:

1. On page 3, third sentence of the third full paragraph, the word "physically" is inserted between the words "to" and "confront" so that the sentence reads:

> As the youngest member of his gang, A.M. believed he had a duty to physically confront S.S.

2.  On page 3, fourth full paragraph, the second sentence beginning "S.S. arrived" is deleted and replaced with the following sentence:

S.S. was already there.

There is no change in the judgment.
Respondent's petition for rehearing is denied.

GILBERT, P. J.                    BALTODANO, J.

Filed 5/31/24 (unmodified opinion)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| In re A.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B329999 (Super. Ct. No. 2009024052) (Ventura County) |
| --- | --- |
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>   Defendant and Appellant. | |

When a court vacates a sentence, the judgment in that case becomes nonfinal for purposes of retroactively applying ameliorative laws.  (*People v. Padilla* (2022) 13 Cal.5th 152, 161-162 (*Padilla*); see *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).)  Applying that principle here, we conclude that a judgment becomes nonfinal when a minor defendant sentenced as an adult prior to the electorate's passage of Proposition 57 (Prop. 57) subsequently has their sentence conditionally reversed on habeas corpus.  Such a defendant is entitled to the benefit of ameliorative laws enacted since the imposition of their original

sentence. Here, that includes Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Senate Bill 1391), which amended Prop. 57 to prohibit the transfer of 14- and 15-year-olds to adult criminal court, and Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333), which amended various provisions of Penal Code[1] section 186.22.

In 2013, A.M. was tried as an adult for murdering a rival gang member when he was 14 years old. A jury convicted him of first degree murder (§§ 187, subd. (a), 189, subd. (a)), and found true allegations that he personally used a deadly weapon and committed his crime for the benefit of a criminal street gang (§§ 12022, subd. (b)(1), 186.22, subd. (b)(1)). It also found true a gang-murder special circumstance allegation (§ 190.2, subd. (a)(22)). The trial court sentenced him to 26 years to life in state prison.

Eight years later, the superior court conditionally reversed the judgment and ordered the juvenile court to conduct a transfer hearing pursuant to Prop. 57. The juvenile court conducted the hearing, granted the district attorney's motion to transfer A.M.'s case to criminal court, and reinstated the judgment.

In his opening brief, A.M. contended his case should not have been transferred because he was 14 years old when he committed his crime. After briefing was complete, we asked the parties to discuss whether Assembly Bill 333 applies to this case. In response to our request, A.M. contended Assembly Bill 333

---

[1] Unlabeled statutory references are to the Penal Code.

2

requires striking the gang-murder special circumstance.[2]  We agree with both of A.M.'s contentions.

FACTUAL AND PROCEDURAL HISTORY

*The murder of S.S.*

A.M. was born in 1994 to a single mother and absentee father.  His stepfather abused him emotionally and physically, beginning when he was five or six years old.  When A.M. was eight, he began taking psychotropic medications to treat his mental health disorders.  Despite these challenges, A.M. was regarded as a "sweet" and "loving" child.

That began to change when A.M. turned 10.  He ran away from home and was exposed to gang culture.  When he was 12, he joined a local gang.  He eventually came to view the gang as his surrogate family, and started to commit petty offenses for them.

In April 2009, A.M. (age 14) and two fellow gang members went to a party.  Sixteen-year-old S.S., a rival gang member, was also at the party.  As the youngest member of his gang, A.M. believed he had a duty to confront S.S.  But he left without doing so.

A.M. then went to a second party.  S.S. arrived a short time later.  The two began to exchange blows.  The fight escalated, and A.M. stabbed S.S. multiple times.  A.M. then ran away and called his mother to pick him up from the side of a road.  S.S. died from his wounds.

The district attorney charged A.M. as an adult with the murder of S.S.  At trial, a gang expert testified that younger gang members like A.M. would do "all they can to bolster their

---

[2] A.M. also contends Assembly Bill 333 requires striking the gang enhancement, but the record reflects that the trial court did so at sentencing.

3

reputation[s]." The expert further testified that a murder like the one A.M. committed would "benefit the gang . . . because it's instilling that fear and intimidation" and earning him "status and respect." The prosecutor relied on this testimony in his closing argument, suggesting that the "fear" created by A.M.'s offense would "increase [his alleged gang's] reputation" and "earn [it] more respect." The jury was not instructed that it needed to find a benefit to A.M.'s alleged gang that was anything more than reputational to render true findings on the gang allegation and gang-murder special circumstance allegation. It was told that the predicate offenses allegedly establishing the gang's pattern of criminal activity "need not be gang related."

The jury convicted A.M. of first degree murder, found true allegations that he used a deadly weapon and committed the murder for the benefit of a criminal street gang, and found true the gang-murder special circumstance allegation. The trial court struck the gang enhancement and sentenced A.M. to 25 years to life on the murder[3] plus one year for the use of a deadly weapon. It also ordered him to register as a gang offender. (See § 186.30.)

We affirmed the judgment on appeal. Our Supreme Court denied review on October 12, 2016. A.M. did not file a petition for writ of certiorari with the U.S. Supreme Court, and the matter became final on January 10, 2017. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [judgment becomes final when time to file petition for writ of certiorari has elapsed]; U.S. Supreme Ct.

---

[3] The court stated its belief that, despite the jury's true finding on the gang-murder special circumstance, sentencing A.M. to life in state prison without the possibility of parole was not permitted given his age when he committed murder. (Citing *People v. Demirdjian* (2006) 144 Cal.App.4th 10, 17.)

Rules, rule 13 [petition for writ of certiorari must be filed within 90 days of entry of judgment in state court of last resort].)

*Prop. 57 and its amendments*

On November 8, 2016, the electorate passed Prop. 57, which took effect the next day. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 304 (*Lara*).) As adopted, Prop. 57 prohibited trying a minor as an adult without " 'a judicial determination . . . that [they were] unfit to be dealt with under juvenile court law.' " (*Lara*, at p. 305.) It allowed prosecutors to request the transfer of only two categories of minors to criminal court: 16- and 17-year-olds alleged to have committed felonies, and 14- and 15-year-olds alleged to have committed specified serious or violent felonies. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 4.2.) Transfer requests would be granted " 'only after a juvenile court judge conduct[ed] a transfer hearing to consider . . . factors such as the minor's maturity, degree of criminal sophistication, [and] prior delinquent history, and whether the minor [could] be rehabilitated.' " (*Lara*, at p. 305; see also Welf. & Inst. Code, § 707, subd. (a)(3) [listing transfer factors].)

The Legislature later enacted several statutes to amend and implement Prop. 57's provisions. For example, effective January 1, 2019, Senate Bill 1391 bars a juvenile court from transferring a 14- or 15-year-old to adult criminal court, regardless of the crime they allegedly committed.[4] (Stats. 2018,

---

[4] Senate Bill 1391 includes an exception for a 14- or 15-year-old not apprehended before the termination of the juvenile court's jurisdiction. (See Welf. & Inst. Code, § 707, subd. (a)(2).) That exception is not relevant here because A.M. has been in custody since he was 14 years old.

5

ch. 1012, § 1; see Welf. & Inst. Code, § 707, subd. (a)(1); see also *O.G. v. Superior Court* (2021) 11 Cal.5th 82, 87 (*O.G.*) [Sen. Bill 1391 was a permissible amendment to Prop. 57].)  Effective January 1, 2022, Assembly Bill No. 624 (2021-2022 Reg. Sess.) (Assembly Bill 624) permits a minor to challenge a transfer decision on direct appeal.  (Stats. 2021, ch. 195, § 1; see Welf. & Inst. Code, § 801.)  And effective January 1, 2023, Assembly Bill No. 2361 (2021-2022 Reg. Sess.) (Assembly Bill 2361) requires that transfer decisions be supported by clear and convincing evidence.  (Stats. 2022, ch. 330, § 1; see Welf. & Inst. Code, § 707, subd. (a)(3).)

*Proceedings below*

In 2021, A.M. moved this court to recall the remittitur in his underlying case, contending he was entitled to relief under Prop. 57 and its amendments, including Senate Bill 1391.  The Attorney General conceded that Prop. 57 applied to A.M.'s case.  We declined to recall the remittitur, however, and instead elected to treat A.M.'s motion as a petition for writ of habeas corpus.  We issued an order to show cause, returnable in the superior court, for the Department of Corrections and Rehabilitation (CDCR) to demonstrate "why relief should not be granted on the ground that [A.M.] is entitled to a [transfer] hearing under Welfare and Institutions Code section 707, subdivision (a)."

After a hearing on the order to show cause, the superior court conditionally reversed A.M.'s conviction and sentence and referred the matter to the juvenile court for a transfer hearing.  A.M. argued that Senate Bill 1391 deprived the juvenile court of "any residual authority" to transfer his case to criminal court because he was 14 when he murdered S.S.  The juvenile court declined to apply Senate Bill 1391, stating that doing so would be

6

"contrary to what was specifically ordered" in the order to show cause. It also believed A.M.'s case was "final" and "should be treated as a continuing writ of habeas corpus for the sole purpose of conducting a transfer hearing."

A.M. petitioned this court for a writ of mandate, requesting that we direct the juvenile court to apply Senate Bill 1391 and deny the district attorney's motion to transfer his case to criminal court. We denied the petition "without prejudice to [A.M.'s] right to seek relief following the transfer hearing" under Welfare and Institutions Code section 801. The district attorney conceded that this provision would provide A.M. with an "adequate appellate remedy" after his transfer hearing.

At the transfer hearing, the district attorney argued the juvenile court should apply the law in effect on January 10, 2017, the date A.M.'s case became final on direct appeal. The court accepted the district attorney's argument in part, concluding that Senate Bill 1391 did not apply: "[O]bviously we're going forward with the transfer hearing." But it rejected the district attorney's argument regarding Assembly Bill 2361, ruling that the standard of proof at the transfer hearing would be clear and convincing evidence. It held the hearing, applied that standard, and granted the district attorney's motion to transfer A.M.'s case to criminal court.

DISCUSSION

*Senate Bill 1391*

A.M. contends the juvenile court erred when it declined to apply the provisions of Senate Bill 1391 and granted the district attorney's motion to transfer his case to criminal court. We agree.

7

Effective January 1, 2019, Senate Bill 1391 bars prosecutors from requesting the "transfer of 14- and 15-year-olds from juvenile court to criminal court." (*People v. Superior Court (Alexander C.)* (2019) 34 Cal.App.5th 994, 998.) The provisions of Senate Bill 1391 apply regardless of whether the minor's case is before the juvenile court after the statute's effective date (see, e.g., *B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 746-747) or the case was not yet final on appeal when Senate Bill 1391 took effect (see, e.g., *People v. Superior Court (I.R.)* (2019) 38 Cal.App.5th 383, 392-393 (*I.R.*)). The Attorney General concedes as much. And as we explain below, we conclude that Senate Bill 1391 also applies where, as here, a case is before the juvenile court because the minor is granted relief on collateral review.

We review questions of retroactivity de novo. (*In re David C.* (2020) 53 Cal.App.5th 514, 519.) Our Supreme Court recently explained the relevant principles: Under *Estrada*, *supra*, 63 Cal.2d 740, "new laws that mitigate punishment . . . are presumed to apply to cases charged before the law's enactment but not yet final." (*Padilla*, *supra*, 13 Cal.5th at p. 160.) "[T]he range of judgments affected by *Estrada* is delimited by constitutional constraints; as [the court] said in *Estrada* itself, a law lessening punishment is understood to apply 'to every case to which it constitutionally could apply.' " (*Id.* at pp. 160-161.) Thus "any restrictions on [the Legislature's] power [to intervene in judicial decisionmaking] would attach at 'the conclusion of a criminal proceeding as a whole'—i.e., when ' "the last word of the judicial department with regard to a particular case or controversy" ' has issued." (*Id.* at p. 161.)

"Consistent with this view, [the Supreme Court has] approved laws that alter indisputably final cases when they

8

create new rules or procedures by which a defendant may seek relief." (*Padilla, supra*, 13 Cal.5th at p. 161.) The *Padilla* defendant, for example, "was sentenced to life imprisonment without the possibility of parole before the United States Supreme Court held . . . that such a sentence is unconstitutional when imposed on a juvenile unless the court has considered whether the sentence is appropriate in light of the minor's age and potential for rehabilitation." (*Ibid.*) But "[a]fter petitioning for habeas corpus relief on that basis, his sentence was vacated, a new term was imposed, and then that sentence was vacated too." (*Ibid.*) That rendered his case nonfinal: "When Padilla's sentence was vacated, the trial court *regained the jurisdiction and duty to consider what punishment was appropriate for him*, and Padilla regained the right to appeal whatever new sentence was imposed." (*Id.* at pp. 161-162, italics added.) That appeal must be deemed "part of direct review of a nonfinal judgment, not collateral review of a final judgment." (*Id.* at p. 163.)

Applying those principles here entitles A.M. to the ameliorative benefit of Senate Bill 1391's provisions. Because A.M.'s judgment was not final on November 9, 2016, Prop. 57 retroactively applies to his case. (See *Lara, supra*, 4 Cal.5th at p. 309.) The superior court was therefore required to conditionally reverse his conviction and sentence on habeas corpus. (See *id.* at pp. 310, 313.) It did so and referred his case to the juvenile court for a transfer hearing. Once that occurred, A.M.'s case became nonfinal (*Padilla, supra*, 13 Cal.5th at pp. 161-162; see also *People v. Lopez* (2023) 93 Cal.App.5th 1110, 1119-1120 [case becomes nonfinal following conditional reversal], review granted Nov. 15, 2023, S281488 (*Lopez*)), and Senate Bill 1391 applied (*I.R., supra*, 38 Cal.App.5th at pp. 392-393).

9

As he did in *Padilla*, "the Attorney General . . . asks us to distinguish . . . between cases that are nonfinal because the defendant is undergoing retrial or resentencing and those in a newly coined procedural stance—cases 'not yet final on initial review.'" (*Padilla*, *supra*, 13 Cal.5th at p. 162.) We cannot do so. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) As the Supreme Court explained when it rejected the Attorney General's request in *Padilla*, "*Estrada* made no such distinction." (*Padilla*, at p. 162.) "The *Estrada* presumption stems from [the] understanding that when the Legislature determines a lesser punishment is appropriate for a particular offense or class of people, it generally does not wish the previous, greater punishment—which it now deems 'too severe'—to apply going forward." (*Ibid.*) "We presume the Legislature intends the reduced penalty to be used instead in all cases in which there is no judgment or a nonfinal one, and in which it is constitutionally permissible for the new law to control." (*Ibid.*) That includes a case that "is nonfinal because the defendant's sentence has been vacated rather than because the initial review of the sentence has not yet concluded." (*Ibid.*)

Our sister courts have applied these principles in analogous scenarios involving previously final judgments. For example, in *People v. Hwang* (2021) 60 Cal.App.5th 358, our colleagues in Division 5 of this district held that Prop. 57 and Senate Bill 1391 retroactively applied in a case rendered nonfinal because the defendant's sentence was recalled pursuant to a recommendation from CDCR. (*Hwang*, at pp. 364-366.) Relying on *Hwang*, a panel of Division 7 held that Prop. 57 and Senate Bill 1391 applied in a case rendered nonfinal upon the granting of a resentencing petition. (*People v. Ramirez* (2021) 71 Cal.App.5th

10

970, 996-1000.) The Fourth District also reached the same conclusion, holding that the granting of a resentencing petition renders a case nonfinal, requiring the application of Prop. 57 and Senate Bill 1391. (*People v. Keel* (2022) 84 Cal.App.5th 546, 563-565.)

The Attorney General's attempts to distinguish *Padilla* are not persuasive. He claims that unlike *Padilla*, no court has vacated A.M.'s pre-Prop. 57 conviction or sentence. The Attorney General is mistaken: In response to our order to show cause, the superior court conditionally reversed A.M.'s conviction and sentence.

The Attorney General also argues that unlike the vacatur in *Padilla*, the conditional reversal here did not disturb A.M.'s conviction or sentence so as to render his case nonfinal. But *Padilla* itself involved a conditional reversal. (See *People v. Padilla* (2020) 50 Cal.App.5th 244, 256, review granted Aug. 26, 2020, S263375, aff'd. (2022) 13 Cal.5th 152.) So have cases retroactively applying Senate Bill 1391. (See, e.g., *People v. Superior Court (T.D.)* (2019) 38 Cal.App.5th 360, 365, 378.) It is with a conditional affirmance, not a conditional reversal, that a judgment remains in place pending further proceedings.[5] (*In re J.K.* (2022) 83 Cal.App.5th 498, 508.)

*People v. Hargis* (2019) 33 Cal.App.5th 199, on which the Attorney General relies, does not demand a contrary conclusion. The *Hargis* court did not consider whether a conditional reversal operates as a reversal that renders a case nonfinal, the issue

---

[5] We respectfully disagree with the dicta in *Andrew M. v. Superior Court* (2020) 43 Cal.App.5th 1116 suggesting otherwise. (See *id.* at p. 1126 [conditional reversal for transfer hearing does not "disturb the verdict or vacate the sentence"].)

relevant to this appeal. " ' "[C]ases are not authority for propositions not considered." ' " (*People v. Gray* (2023) 15 Cal.5th 152, 169, fn. 5.) Moreover, the *Hargis* court presumed that a defendant's case that was final before an ameliorative statute took effect would remain final thereafter. (*Hargis*, at p. 209.) That presumption has been undermined by *Padilla*. (See *Padilla*, *supra*, 13 Cal.5th at pp. 163-166 [rejecting bright-line rule that " 'a case has either become final on direct appeal or it has not' "].)

Alternatively, the Attorney General argues that applying Senate Bill 1391 during the proceedings below would have been beyond the scope of our order to show cause. The juvenile court also relied on this argument when it declined to apply Senate Bill 1391. But we ordered CDCR to show cause as to why A.M. was not entitled to a transfer hearing pursuant to Welfare and Institutions Code section 707, subdivision (a). That subdivision incorporates the provisions of Senate Bill 1391 specifying that transfer hearings may be held *only* for minors who commit their crimes when age 16 or older. (Welf. & Inst. Code, § 707, subd. (a)(1).) And while our order to show cause did not refer to Senate Bill 1391's age limitations, applying it here is consistent with the purpose of those hearings: to determine whether juvenile defendants like A.M. may be transferred to criminal court. (*O.G.*, *supra*, 11 Cal.5th at pp. 96-97, 100-102.) It is also consistent with *Padilla*, which noted that applying Prop. 57 to nonfinal cases permits relitigating punishment without relitigating guilt. (*Padilla*, *supra*, 13 Cal.5th at pp. 169-170.)

The Attorney General's position that Senate Bill 1391 does not apply here is also rife with inconsistencies. For example, he concedes the order transferring A.M.'s case to criminal court is

12

appealable pursuant to Welfare and Institutions Code section 801.  He also states that the juvenile court "prudently applied" the standard of clear and convincing evidence when it conducted the transfer hearing.  But Assembly Bill 624, which added section 801 to the Welfare and Institutions Code, and Assembly Bill 2361, which set the evidentiary standard to apply at transfer hearings, both took effect *after* Senate Bill 1391.  The Attorney General does not explain why these statutes should apply here but Senate Bill 1391 should not.

Consistent with *Padilla*, we conclude that A.M.'s case will become final only "when 'the criminal proceeding as a whole' has ended [citation] and 'the courts can no longer provide a remedy to a defendant on direct review.' " (*Padilla*, *supra*, 13 Cal.5th at p. 161.)  Here, when the judgment was conditionally reversed, A.M.'s case became nonfinal.  Prop. 57, as amended by Senate Bill 1391, therefore applies.[6]

*Assembly Bill 333*

A.M. contends Assembly Bill 333 requires us to strike the true finding on the gang-murder special circumstance tied to his murder conviction.  The Attorney General counters that Assembly Bill 333 does not apply here, either because A.M.'s case was already final when the bill took effect or because A.M. was not sentenced pursuant to section 190.2.  In our view, A.M. has the better argument.

Effective January 1, 2022, Assembly Bill 333 amended several of section 186.22's provisions.  These amendments, as incorporated into the gang-murder special circumstance,

---

[6] Given our conclusion, we do not resolve whether clear and convincing evidence supported the juvenile court's decision to transfer the case to criminal court.

13

retroactively apply to cases that are not yet final. (*People v. Rojas* (2023) 15 Cal.5th 561, 580 (*Rojas*).) As set forth above, once the superior court conditionally reversed the judgment in A.M.'s case, his case was nonfinal. Assembly Bill 333's amendments to the special circumstance therefore applied. (*Lopez, supra*, 93 Cal.App.5th at p. 1120, review granted; see also *People v. Trent* (2023) 96 Cal.App.5th 33, 44 [Assem. Bill 333 applies during § 1172.6 resentencing], review granted Dec. 20, 2023, S282644 (*Trent*); *People v. Salgado* (2022) 82 Cal.App.5th 376, 380-381 [Assem. Bill 333 applies during § 1172.1 resentencing].)

This conclusion does not conflict with *Padilla*'s statement that applying Prop. 57 to nonfinal cases does not permit relitigating guilt. As the *Trent* court explained, the statement in *Padilla* was "intended to allay concerns that the defendant in that case would request a new adjudication of his guilt in the juvenile court itself." (*Trent, supra*, 96 Cal.App.5th at p. 43, review granted.) It was not, as the Attorney General argued, "intended to divorce the court's retroactivity analysis from instances in which the retroactive relief would result in a more favorable sentence because the underlying change required reversal of a count of conviction for possible retrial." (*Ibid.*) Such an approach would not be "consistent with the 'full resentencing rule,' " which " 'allows a court to revisit all prior sentencing decisions when resentencing a defendant.' " (*Id.* at p. 44.) A judgment "cannot be partially final and partially nonfinal." (*Lopez, supra*, 93 Cal.App.5th at p. 1117, review granted [citing *Padilla, supra*, 13 Cal.5th at pp. 160-161]; accord *People v. Mitchell* (2023) 97 Cal.App.5th 1127, 1140-1141, review granted Feb. 21, 2024, S283474.)

14

We further disagree with the Attorney General's argument that A.M. is not entitled to relief because the trial court did not sentence him pursuant to section 190.2.  Even though the trial court did not sentence A.M. pursuant to this section, A.M. would still have the stigma of committing a gang-related murder on his record—despite prosecutors' failure to meet Assembly Bill 333's stricter requirements.  It would also require him to register as a gang offender—again, despite the lack of Assembly Bill 333's required findings.  (§ 186.30, subd. (b)(3); see also § 190.2, subd. (a)(22) [borrowing definitions from § 186.22]; *In re J.V.* (2010) 181 Cal.App.4th 909, 912 [§ 186.30 borrows definitions from § 186.22].)  Legislative enactments can retroactively negate such collateral consequences.  (See, e.g., *People v. Buycks* (2018) 5 Cal.5th 857, 878-879.)  And the Legislature clearly indicated its desire to do so here.  (See Stats. 2021, ch. 699, § 2, subd. (b) [noting negative impacts of being designated a gang member].)

Where, as here, Assembly Bill 333 applies retroactively to a jury's gang-murder special circumstance finding, we review for harmless error pursuant to *Chapman v. California* (1967) 386 U.S. 18.  (*People v. Sek* (2022) 74 Cal.App.5th 657, 668.)  Under *Chapman*, vacating the jury's finding is "required unless 'it appears beyond a reasonable doubt' that the [finding] would have been the same" under current law.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1207.)  If "there is any reasonable possibility that the error might have contributed to the" finding, vacatur is required.  (*People v. Lewis* (2006) 139 Cal.App.4th 874, 887.)

Vacatur is required here.  The gang-murder special circumstance applies if a juvenile "intentionally killed the victim while [they were] an active participant in a criminal street gang, as defined in subdivision (f) of [s]ection 186.22, and the murder

15

was carried out to further the activities of the criminal street gang." (§ 190.2, subd. (a)(22).)  Subdivision (f) of section 186.22 defines a "criminal street gang" as a group that engages in a "pattern of criminal gang activity."  Since 2022, subdivision (e) of that section has defined "pattern of criminal gang activity" as committing offenses that benefit a gang in a way that is "*more than reputational.*"  (Italics added.)

At trial, the gang expert did not testify that the murder A.M. committed benefited his gang in any way that was more than reputational.  The jury similarly was not instructed that it needed to conclude that the murder benefited A.M.'s gang in a way that was more than reputational to render a true finding on the gang-murder special circumstance.  To the contrary, the jury was instructed that any predicate offenses "need not be gang related"—something the prosecutor reiterated in his closing argument.  We thus conclude the evidence was insufficient to sustain the special circumstance.  (*People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032-1033.)  It must be vacated, and the accompanying gang registration requirement must be stricken. (*Rojas*, *supra*, 15 Cal.5th at p. 580.)

## DISPOSITION

The order granting the district attorney's motion to transfer A.M.'s case to criminal court, entered June 6, 2023, is reversed, and the matter is remanded to the juvenile court with directions to enter a new order denying the district attorney's motion.

The true finding on the gang-murder special circumstance is vacated, and the requirement for A.M. to register as a gang offender is stricken.  Prosecutors have the option of retrying the special circumstance and meeting the new burden of proof under

16

Assembly Bill 333.

After the hearing on the gang-murder special circumstance, if any, the juvenile court shall hold a dispositional hearing. It shall treat A.M.'s murder conviction as a juvenile adjudication and impose an appropriate disposition.

<u>CERTIFIED FOR PUBLICATION</u>.


BALTODANO, J.


I concur:


GILBERT, P. J.


17

YEGAN, J., Dissenting:

I respectfully dissent. The result reached by the majority opinion stretches the concept of "true reversal" to "conditional reversal." I have two observations before a legal analysis. First, this is a serious gang related stabbing where the victim is dead because of appellant's decision and his physical assault upon the victim. Even though appellant was fourteen years old, it is presumed that he knew what he was doing. Most, if not all fourteen-year-olds, should know that it is unlawful and wrong to repeatedly stab a person to death with a knife. The jury found appellant guilty of this serious offense and the sentencing judge appreciated the gravity of the situation. Second, appellant has been in prison for fifteen years and is eligible for release on parole. He will be released on a parole if and when the Board thinks he is ready for release. This should be his only potential remedy.

The majority equate the "conditional reversal" with a "true reversal." This results in a potential "get-out-of-jail-free" card. Sentencing is serious and solemn business. It is not a game and the courts should, at least, attempt to, honor the sanctity of a final judgement. To now undo the verdict and sentence may be truly unproductive. Appellant is 29 years old now and the time is long passed when he can be "treated" as a juvenile. This is the real problem created by the four-to-three opinion in *People v. Padilla* (2022) 15 Cal.5th 152. If the majority opinion is correct, the only theoretical remedy for the People is Welfare & Institutions Code section 1800. (*In re Gary W.* (1971) 5 Cal.3d. 296.)

A "conditional reversal" is, obviously, not a reversal else the word, "conditional" would not be included in the superior court's

order.  Let us use a modicum of common sense:  The superior court, by ordering a transfer hearing, was only looking for a way to allow the juvenile court to consider the merits of keeping appellant in the juvenile system.  It did not reverse the conviction.  It did not vacate the sentence.  And it did not believe that it was rendering the earlier judgment "not final."  We should not stretch the *Padilla* holding beyond its express limits.

But, the majority opinion, essentially, erases the word, "conditional" and thus, appellant gets the benefit of the ameliorative law which, in reality, vacates the jury verdict and the judgment of 15 years ago because even though it was final for fifteen years, it is not now "final."  I see no principled way to agree with this analysis.  The majority opinion result seems forced so that this appellant may be treated with leniency.  The record does not allow me to conclude that appellant is entitled to leniency.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

2

Ferdinand Inumerable, Judge

Superior Court County of Ventura

_____

Latham & Watkins, Nima H. Mohebbi, Sebastien Wadier, Max A. Shapiro, Erica Peña, Tatum P. Rosenfeld, Mikaela W. Gilbert-Lurie and Melissa Arbus Sherry for Defendant and Appellant.

Jonathan Grossman, Steven Torres and Mi Kim for Pacific Juvenile Defender Center as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.